# In the United States Court of Federal Claims

No. 05-306 V
(Filed: June 4, 2012)
TO BE PUBLISHED

|  |  |  |
|---|---|---|
| MADISON DERIBEAUX, a minor, by her parents and natural guardians, GUS DERIBEAUX and KIMBERLY BURSHIEM, | ) ) ) ) ) | National Vaccine Injury Compensation Program; National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34; DTaP vaccine; SCN1A genetic mutation; Dravet's Syndrome; alternative causation; sole substantial factor unrelated to the vaccine; Restatement (Second) of Torts; *Althen v. Secretary of Health & Human Services*, 418 F.3d 1274 (Fed. Cir. 2005); *Shyface v. Secretary of Health & Human Services*, 165 F.3d 1344 (Fed. Cir. 1999). |
| Petitioners, | ) ) | |
| v. | ) ) | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) | |
| Respondent. | ) ) ) | |

Clifford J. Shoemaker, Shoemaker & Associates, Vienna, Va., for petitioners.

Glenn A. MacLeod, Senior Trial Counsel, Catharine E. Reeves, Assistant Director, Mark W. Rogers, Deputy Director, Rupa Bhattacharyya, Director, Torts Branch, Stuart F. Delery, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., for respondent.

## OPINION AND ORDER[1]

GEORGE W. MILLER, Judge

Petitioners, Gus Deribeaux and Kimberly Burshiem, on behalf of their daughter, Madison Deribeaux, seek review of Special Master Lord's December 9, 2011 decision denying compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 to -34, established by the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-1 to -34) ("Vaccine Act"). Petitioners filed for compensation on March 11, 2005, alleging that Madison was injured by the diphtheria, tetanus, and acellular pertussis ("DTaP") vaccine she received on March 29, 2002. Special Master Millman first heard petitioners' case and granted entitlement to compensation. After new evidence emerged during the damages phase, the case was transferred to Special

---

[1] Pursuant to Rule 18(b), Appendix B of the Rules of the Court of Federal Claims, this Opinion and Order is initially being filed under seal. By rule, the parties are afforded fourteen days in which to propose redactions.

Master Lord, who held an additional hearing and subsequently denied relief on the ground that respondent, the Secretary of Health and Human Services, proved by a preponderance of the evidence that a factor unrelated to the vaccine, namely Madison's genetic mutation, caused her injury.

Petitioners timely filed a motion for review under § 300aa-12(e) of the Vaccine Act, claiming that Special Master Lord's decision was arbitrary, capricious, not in accordance with law, and an abuse of discretion. *See* Mot. for Review (docket entry 115, Jan. 9, 2012). Petitioners assert that the special master's decision should be set aside and a new decision should be entered in petitioners' favor or, in the alternative, that the Court should remand the case back to the special master for further consideration. *Id.* at 2.

## I.    Background[2]

### A.    *Madison's Medical History*

Madison Deribeaux was born on August 19, 2001. *Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs.*, No. 05-306V, 2011 WL 6935504, at *3 (Fed. Cl. Dec. 9, 2011) (special master decision). On March 28, 2002, she received the DTaP vaccine along with other typical childhood vaccines. *Id.* The next day, she was taken to the emergency room having suffered a prolonged seizure. *Id.* No fever was observed upon her arrival at the hospital. *Id.* She continued to seize, and her temperature was later recorded as 103.6 degrees Fahrenheit. *Id.*

Madison was at the hospital for several days during which she suffered no additional seizures and her electroencephalogram ("EEG") and computerized tomography ("CT") tests were reported normal. *Id.* Additionally, an April 4, 2002 magnetic resonance imaging ("MRI") of Madison's brain was reported normal. *Id.* After this initial visit to the hospital, Madison experienced seizures throughout the year that were often, though not always, accompanied by a fever. *Id.* at *3–5. On April 16, 2002, an immunologist observed the temporal association between Madison's seizures and her vaccinations. *Id.* at *4. Through April 18, 2002, Madison's MRI and EEG test results were reported as normal. *Id.* A January 2003 EEG was also reported as normal. *Id.* at *5.

In April 2003, Madison was admitted to the hospital with "recurrent convulsive episodes." *Id.* Her discharge note stated that Madison had a seizure disorder that began two days after the DTaP vaccination, "with subsequent admission and treatment for atypical Kawasaki disease."[3] *Id.* An April 30, 2003 MRI "reported white matter abnormalities possibly related to hypomyelinization, or 'a metabolic disease such as lysosomol or mitochondrial disease

---

[2] The parties do not dispute the underlying facts of this case, which, for purposes of this Opinion and Order, are taken from the special master's decision, *Deribeaux ex rel. Deribeaux v. Secretary of Health & Human Services*, No. 05-306V, 2011 WL 6935504 (Fed. Cl. Dec. 9, 2011). For a detailed recitation of the underlying facts, see *id.* at *3–10.

[3] "Kawasaki disease is a rare, immune-mediated vasculitis that can affect the skin, heart, mucus membranes, eyes, mouth and central nervous system." *Deribeaux*, 2011 WL 6935504, at *1 n.4.

as well [as] metachromatic leukodystrophy.'"[4]  *Id.* (alteration in original) (quoting Pet'rs' Ex. 6, at 8; Pet'rs' Ex. 4, at 397).  Madison's seizures and related treatment persisted through July 2003.  *Id.*  In August 2003, a test for enterovirus[5] was positive.  *Id.*  A November 7, 2003 MRI revealed "increased T2-weighted signal in the periventricular white matter . . . .  Differential diagnosis includes gliosis versus hypomyelination."[6]  *Id.* (alteration in original) (quoting Pet'rs' Ex. 6, 9; Pet'rs' Ex. 4, at 304) (internal quotation marks omitted).  Thereafter, Madison continued to experience seizures and receive related treatment.  *Id.*

In April 2004, Madison was observed to have "delayed fine motor skills, poor attention, and hyperactive behavior."  *Id.* at *6 (citing Pet'rs' Ex. 6, at 10; Pet'rs' Ex. 4, at 163).  In February 2005, while at the hospital for treatment, it was observed that Madison's development stopped after her first year.  *Id.*  Madison continued to experience seizures through 2005.  *Id.*

In December 2005, genetic testing revealed that Madison had a "DNA sequence variation in [her] SCN1A gene."  *Id.* at *7.  The laboratory report stated that the mutation was not inherited and arose *de novo*.  *Id.*  An SCN1A mutation has been associated with Dravet's Sydrome ("DS"), which is also known as Severe Myoclonic Epilepsy of Infancy ("SMEI").[7]  *Id.*

---

[4]  The special master's decision well explained the results of Madison's MRI:

> Hypomyelinization is the disappearance or inadequate formation of myelin sheaths on nerves.  [Dorland's Illustrated Medical Dictionary 903 (32d ed. 2012)].  (Note "myelinization" and "myelination" are used interchangeably, *see id.* at 1218).  Metabolic disease is a general term for diseases caused by disruption of a normal metabolic pathway because of a genetically determined enzyme defect.  *Id.* at 538.  Mitochondrial diseases are a diverse group of mainly multisystemic and maternally inherited disorders caused by mutations of mitochondrial DNA. . . . *Id.* at 539.  Metachromatic leukodystrophy is an autosomal recessive genetic disorder.  The infantile form usually begins in the second year of life and is additionally characterized by developmental delay, seizures, optic atrophy, ataxia, weakness, loss of speech, and progressive spastic quadriparesis.  *Id.* at 1029.

*Deribeaux*, 2011 WL 6935504, at *5 n.11.

[5]  "Enterovirus is a genus of viruses that preferentially inhabit the intestinal tract.  Infection is usually asymptomatic or mild but may result in a variety of disease syndromes.  Most strains of human enterovirus cause only mild symptoms such as fever."  *Deribeaux*, 2011 WL 6935504, at *5 n.12 (citing Dorland's Illustrated Medical Dictionary, *supra*, at 626–27).

[6]  Gliosis is the overgrowth of certain cells in a damaged area of the brain or spinal cord.  Stedman's Medical Dictionary 812 (28th ed. 2006); *see* Dorland's Illustrated Medical Dictionary, *supra*, at 784.

[7]  DS is an epilepsy syndrome that typically presents during the first year of life.  *Deribeaux*, 2011 WL 6935504, at *8.  Infants with DS experience normal development for the first few months of life, "but then develop seizures in a characteristic fashion."  *Id.*

at *7–8.  Following genetic testing, "her treating physicians consistently noted the diagnosis of DS and/or SCN1A mutation in association with her chronic seizures and developmental delays." *Id.* at *7.

B.       *Procedural History*

On March 11, 2005, before Madison's genetic mutation was discovered, petitioners filed a petition for compensation on behalf of Madison pursuant to the Vaccine Act.  *Id.* at *1.  The petition alleged that Madison's seizure disorder resulted from the DTaP vaccine she received. *Id.*  On September 20, 2007, a hearing was held before Special Master Millman.  *Id.*

At this hearing, petitioners and respondent each presented two experts.  Petitioners presented the testimony of Dr. Tornatore, "an associate professor of neurology at Georgetown University School of Medicine . . . [who] serves as director of its neurology residency program." *Id.* at *9.  Dr. Tornatore is board certified in neurology.  *Id.*  Dr. Tornatore testified that Madison had a reaction to the vaccine as a result of her poor immune system, which triggered the initial seizure and the subsequent condition.  *Id.* at *10.  The initial seizure, Dr. Tornatore testified, caused brain damage that resulted in the full extent of Madison's condition.  *Id.*  He also testified that the vaccine caused Madison's Kawasaki disease.  *Id.*

Petitioners also presented the testimony of Dr. Joseph Bellanti, "a professor of pediatrics in microbiology and immunology at Georgetown University School of Medicine."  *Id.*  Similar to Dr. Tornatore, Dr. Ballanti's testimony was that "the vaccinations Madison received triggered an inflammatory response that cascaded into all the conditions from which she suffered."  *Id.*

The experts put forward by respondent testified that the vaccine did not cause Madison's condition.  Dr. Russell Snyder, a neurologist who is board certified in neurology, pediatrics, and pediatric neurology, testified that Madison's condition "could be explained completely by Kawasaki disease" and that there was no evidence that Madison's initial seizure resulted in brain damage.  *Id.*  He testified that "DTaP vaccination can cause febrile seizures but not chronic seizure disorders in children."  *Id.*  Additionally, Dr. Snyder noted the relationship between SCN1A mutations and DS.  *Id.* at *11.  He explained that, with an SCN1A mutation, the vaccine could have caused a fever that resulted in the initial seizure, but the fever "would not be a 'cause' of the child's neurological problems."  *Id.*

Dr. Brian Ward was the second of respondent's experts before Special Master Millman. Dr. Ward, "an infectious disease specialist from McGill University," testified that Madison's

---

(quoting Resp't's Ex. RR, at 2) (internal quotation marks omitted).  After the first seizures, which are typically prolonged, an individual with DS may "manifest a variety of types of seizures, not associated with fever," which are difficult to treat.  *Id.* (citing Resp't's Ex. RR, at 2).  After their first year, children with DS experience developmental delays.  *Id.*  A connection between DS and the SCN1A gene has been consistently observed.  *See id.* at *8–9.

condition was caused by enterovirus.  *Id.*  He opined that her initial seizure was not related to the vaccination.  *Id.*  Additionally, although he agreed that the vaccination could have caused a fever, he stated that it would not have caused brain damage.  *Id.*

After reviewing the testimony and all the evidence, Special Master Millman concluded that petitioners had established causation and were entitled to compensation.  *Deribeaux ex rel. Deribeaux v. Sec'y of Dept. of Health & Human Servs.*, No. 05–306V, 2007 WL 4623461, at *36 (Fed. Cl. Dec. 17, 2007), *vacated by Deribeaux*, 2011 WL 6935504.  She then directed the parties to begin the damages phase of the proceedings.  *Id.*

During the damages phase, petitioners produced medical records at the request of respondent.  These records, previously undisclosed, included documents relating to Madison's diagnosis of DS and the opinions of her treating physicians that DS caused her seizures.  *Deribeaux*, 2011 WL 6935504, at *1, *12.  The records demonstrated that "Madison suffered from a genetic mutation known to cause a severe seizure and developmental disorder called [DS]."  *Id.* at *1.  As a result, respondent moved to re-open the entitlement phase of the proceeding.  *Id.* at *1, *12.

After respondent moved to reopen the entitlement phase, the case was transferred to Special Master Lord.  *Id.* at *1.  Special Master Lord determined that the evidence presented before Special Master Millman was "sufficient to set forth Petitioners' *prima facie* case, and to shift the burden of proof to the Secretary to establish alternative causation."  *Id.* at *3.  Accordingly, Special Master Lord limited the proceedings before her, including briefing and a hearing, to the issue of whether respondent carried her burden to show alternative causation.  *Id.*

During the second set of proceedings, petitioners' expert, Dr. Tornatore, stated that his opinion expressed during the first proceedings was unchanged by the evidence of Madison's DS.  *Id.* at *6, *12.  Respondent presented the testimony of an additional expert not involved in the first hearing, Dr. Gerald Raymond.  *Id.* at *12.  "Dr. Raymond opined that the sole cause of Madison's neurological disorders was her genetic mutation, and that vaccination neither caused nor aggravated her condition."  *Id.* (citing Resp't's Ex. RR, at 6).

After reviewing the briefs of the parties, the testimony of both experts, the findings of Special Master Millman, and the plethora of medical literature presented by both sides, Special Master Lord determined that respondent carried her burden to demonstrate alternative causation and concluded that "DS provided a complete, alternative explanation for Madison's condition."  *Id.* at *46.  Accordingly, she found that petitioners had not established entitlement to compensation.  *Id.*

Pursuant to Vaccine Rule 23 of Appendix B of the Rules of the Court of Federal Claims, on January 9, 2012 petitioners filed a motion for review in the Court of Federal Claims requesting the court to "set aside the Decision and that a decision be entered in Petitioners' favor or in the alternative that the Court remand the case back to the Special Master for further consideration."  Mot. for Review 2.  Respondent filed a response in opposition to petitioners' motion for review on February 8, 2012 (docket entry 117).  A hearing was held on April 30, 2012.

**II.      Jurisdiction and Standard of Review**

Pursuant to the Vaccine Act, the Court of Federal Claims has jurisdiction to review decisions of special masters. 42 U.S.C. § 300aa-12(e). After reviewing a motion for review, the Court of Federal Claims may do one of three things: it may (1) "uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision"; (2) "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law"; or (3) "remand the petition to the special master for further action in accordance with the court's direction." *Id.* § 300aa-12(e)(2)(A)–(C).

The court will review the legal conclusions of the special master *de novo* and will defer to the special master on findings of fact, unless the court determines that such findings are arbitrary or capricious. *Porter v. Sec'y of Health & Human Servs.*, 663 F.3d 1242, 1248–49 (Fed. Cir. 2011); *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010). "'[R]eversible error will be extremely difficult to demonstrate' where the special master 'has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision.'" *Porter*, 663 F.3d at 1253–54 (quoting *Hines v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)).

**III.      Discussion**

In their motion for review, petitioners make three objections to the decision of the special master denying them entitlement to compensation. First, petitioners challenge the special master's analysis in concluding that respondent met her burden of proof. Petitioners state that a different standard should have been utilized—namely the allegedly higher burden of proof contained in the Restatement (Second) of Torts rather than the three-part test announced by the Federal Circuit in *Althen v. Secretary of Health & Human Services*, 418 F.3d 1274 (Fed. Cir. 2005). Second, petitioners challenge the special master's reliance on the testimony of respondent's expert, Dr. Raymond, concerning the effect of Madison's genetic mutation, arguing that the special master substituted the expert's opinion for legal causation. Third, petitioners argue that the special master's determination that respondent proved the existence of a "sole substantial factor unrelated" to the vaccination was arbitrary, capricious, an abuse of discretion, and contrary to law.

  *A. Petitioners' Objection to the Standard of Proof Used by the Special Master in Finding for Respondent*

Pursuant to the Vaccine Act, there are two ways in which a petitioner can show that a vaccine caused his injuries. He may demonstrate that his injury is listed on the Vaccine Injury Table (a Table injury), in which case he will receive a statutory presumption of causation. 42 U.S.C. §§ 300aa-11(c), -14(a). If his injury is not on the Vaccine Injury Table (an off-Table injury), he must prove causation in fact to demonstrate entitlement to compensation. *Id.* §§ 300aa-11(c), -13(a)(1). In this case, Madison's condition was off-Table, thus requiring petitioners to prove causation in fact by a preponderance of the evidence. *Id.* § 300aa-13(a)(1).

The Federal Circuit has established a three-prong test that petitioners alleging an off-Table injury must satisfy in order to prove causation.  *See Althen*, 418 F.3d at 1278.  Specifically, a petitioner must

> show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury.

*Id.*

Once a petitioner establishes his prima facie case by satisfying the *Althen* three-prong test, the burden shifts to the respondent to show by a preponderance of the evidence that the injury is the result of factors unrelated to the vaccine.  *See* 42 U.S.C. § 300aa-13.  In order to meet its burden, the government must "identify[] a particular . . . factor (or factors) and present[] sufficient evidence to establish that it was the sole substantial factor in bringing about the injury."  *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1354 (Fed. Cir. 2008) (citing *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548 (Fed. Cir. 1994)); *accord Althen*, 418 F.3d at 1278.

In this case, Special Master Lord determined that, given the evidence presented at the proceeding before Special Master Millman, petitioners established their prima facie case of causation and entitlement to compensation.  *Deribeaux*, 2011 WL 6935504, at *3.  Accordingly, the burden shifted, and Special Master Lord limited the proceedings before her to the specific issue of whether respondent carried her burden of establishing alternative causation.  *Id.*

Petitioners take issue with the analysis the special master applied when reviewing the evidence respondent presented to show that a factor unrelated to the vaccine caused Madison's condition.  Specifically, they argue that the special master should have applied the standard contained in the Restatement (Second) of Torts as announced in *Shyface v. Secretary of Health & Human Services*, 165 F.3d 1344 (Fed. Cir. 1999), not the three-part *Althen* test.  In *Shyface*, which pre-dates the *Althen* decision by approximately six years, the Federal Circuit adopted the Restatement (Second) of Torts approach to causal relationships and held that "establishment of *prima facie* entitlement to compensation according to the non-Table method would require the petitioner to prove, by a preponderance of the evidence, that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury."  *Shyface*, 165 F.3d at 1352.  In addition, the *Shyface* court endorsed the Restatement's recognition that

> concurrent forces may bring about a single harm, requiring weighing the contributing factors: . . . "Some other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of [another factor] insignificant and, therefore, to prevent it from being a substantial factor."

*Id.* (quoting Restatement (Second) of Torts § 433 cmt. d).

Petitioners mischaracterize the relationship between the Federal Circuit's adoption of the Restatement (Second) of Torts in *Shyface* and its announcement of the three-part test in *Althen*. The Restatement standard, as adopted in *Shyface*, is not at odds with the *Althen* factors; rather, those factors are themselves derived from the Restatement standard.

In *Shyface*, the Federal Circuit determined that, to prevail on a petition for compensation, a petitioner must show "by a preponderance of the evidence, that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface*, 165 F.3d at 1352. The *Althen* court viewed this standard in conjunction with the analyses in other off-Table injury cases and succinctly stated the test petitioners must meet in order to state a prima facie case. More specifically, in *Althen* the Federal Circuit began with the statutory requirements for proving an off-Table injury, 42 U.S.C. §§ 300aa-11(c)(1)(C)(ii)(I), -13(a)(1), then cited *Shyface* for the proposition that a petitioner must prove by a preponderance of the evidence that the vaccine caused his injury. *Althen*, 418 F.3d at 1278 (citing *Shyface*, 165 F.3d at 1352–53). It relied on *Grant v. Secretary of Health & Human Services*, a 1992 off-Table injury case, to explain that "[t]o meet the preponderance standard, [a petitioner] must 'show a medical theory causally connecting the vaccination and the injury.'" *Althen*, 418 F.3d at 1278 (citing *Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992). After briefly discussing *Grant*, the *Althen* court adopted the *Shyface* standard, influenced by the Restatement (Second) of Torts, that a petitioner must show "the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Id.* (quoting *Shyface*, 165 F.3d at 1352–53) (internal quotation marks omitted). This assessment of the standards employed in off-Table vaccine cases preceding *Althen* led the court to announce its three-part test. The *Althen* test embodies the concepts contained in the Restatement (Second) of Torts that were adopted by the *Shyface* court. *See Stone v. Sec'y of Health & Human Servs.*, 676 F.3d 1373, 1379 (Fed. Cir. 2012) ("[T]he causation standard in off-Table Vaccine Act cases is to be applied consistently with the principles set forth in the Second Restatement of Torts." (citing *Walther v. Sec'y of Health & Human Servs.*, 485 F.3d 1146, 1151 (Fed. Cir. 2007))); *Walther*, 485 F.3d at 1150 (explaining that, in the context of vaccine cases, the Federal Circuit in *Shyface* "adopted the actual causation standard of the Restatement (Second) of Torts" and that "precedent has established that a petitioner satisfies this standard by" meeting the three-part *Althen* test); *Hammitt ex rel. Hammitt v. Sec'y of Health & Human Servs.*, 98 Fed. Cl. 719, 728 (2011) (explaining that a petitioner meets the standard announced in *Shyface*, taken from the Restatement (Second) of Torts, by satisfying the three prongs of *Althen*), *aff'd sub nom. Stone v. Sec'y of Health & Human Servs.*, 676 F.3d 1373 (Fed. Cir. 2012).

Accordingly, by applying the *Althen* factors to respondent's case, the special master in fact applied the Restatement standard. Therefore, the Court rejects petitioners' argument that the special master should have applied the standard announced in *Shyface*. Indeed, that standard is subsumed within the *Althen* three-prong test.

To the extent that petitioners are arguing that the special master should have applied a superseding cause analysis, *see* Mot. for Review 6–8, the Court disagrees. As this court has observed, "the 'factor unrelated' defense under the Vaccine Act is not analogous to the defense of 'superseding cause' in the common law." *Hammitt*, 98 Fed. Cl. at 728; *see also Stone v. Sec'y of Health & Human Servs.*, 99 Fed. Cl. 187, 192 (2011) (observing the distinction between a

superseding cause and the sole cause of an injury), *aff'd*, 676 F.3d 1373 (Fed. Cir. 2012). Additionally, as respondent points out, she never presented a superseding cause theory in support of her case. By law, respondent's burden is to establish by preponderant evidence that a factor unrelated to the vaccine caused Madison's condition. 42 U.S.C. § 300aa-13(a)(1). This is the standard that the special master applied when conducting her analysis of respondent's evidence. This was in accordance with law and the special master was under no obligation to conduct a superseding cause analysis.[8] *See Stone*, 676 F.3d at 1381 ("[The superseding cause] analysis has no role to play where . . . the initial factor is found to have no causal relationship to the ultimate injury.").[9]

Intertwined with their previous arguments, petitioners contend that the special master should have applied a higher burden of proof to respondent's case. Mot. for Review 8, 11–12. First, the Vaccine Act itself states that the government's burden is to prove *by a preponderance of the evidence* a substantial factor unrelated to the vaccine caused the injury. 42 U.S.C. § 300aa-13(a)(1)(B). This is identical to the burden of proof a petitioner bears to establish his prima facie case. *Id.* § 300aa-13(a)(1)(A) ("Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole . . . that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition . . . ."). Case law indicates that the only time a petitioner's burden should be weighed differently from respondent's is when "the evidence is seen in equipoise," in which case "the government has failed in its burden of persuasion and compensation must be awarded." *Knudsen*, 35 F.3d at 550; *see Althen*, 418 F.3d at 1280 (noting that in "the system created by Congress . . . close calls regarding causation are resolved in favor of injured claimants"). Indeed, the Federal Circuit has stated, "[T]he standards that apply to a petitioner's proof of actual causation in fact in off-table cases should be the same as those that apply to the government's proof of alternative actual causation in fact." *Knudsen*, 35 F.3d at 549. Accordingly, the special master did not err when she applied a preponderance of the evidence standard to respondent's case.

---

[8] Petitioners rely on the Office of Special Master's decision in *Sucher v. Secretary of Health & Human Services*, No. 07-0058V, 2010 WL 1370627 (Fed. Cl. Mar. 15, 2010), to support their argument that a superseding cause analysis was required in this case. Mot. for Review 6–8. In *Sucher*, however, the respondent specifically presented a superseding cause theory and attempted, unsuccessfully, to prove that the victim's genetic predisposition to seizures—a genetic predisposition not related to an SCN1A mutation—"was a superseding cause of her injury, rendering irrelevant the vaccine as a substantial cause." *Sucher*, 2010 WL 1370627, at *43–45.

[9] Notably, Special Master Lord addressed the question of significant aggravation, an issue not addressed by Special Master Millman. *See Deribeaux*, 2011 WL 6935504, at *44–46. Significant aggravation "means any change for the worse in a preexisting condition which results in markedly greater disability, pain, or illness accompanied by substantial deterioration of health." 42 U.S.C. § 300aa-33(4). The special master found that petitioners did not meet their burden of proving that Madison's DS was aggravated by the DTaP vaccination, *Deribeaux*, 2011 WL 6935504, at *45–46, and petitioners do not now argue that Special Master Lord's conclusion in this respect was arbitrary, capricious, contrary to law, or an abuse of discretion.

To the extent that petitioners take issue with the special master's specific method of assessing respondent's case, namely employing the *Althen* factors to review respondent's evidence in support of her theory that a factor unrelated to the vaccine caused Madison's condition, the Court finds petitioners' contention unpersuasive.  According to statute, the special master was to assess whether respondent showed by "a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition."  42 U.S.C. § 300aa-13(a)(1).  And, as the Federal Circuit has observed, "[t]he special master's role is to apply the law."  *Althen*, 418 F.3d at 1280.  The statute does not dictate the precise method the special master is to employ when conducting this analysis.  Here, the special master properly analyzed whether, pursuant to the Vaccine Act, respondent proved her case by a preponderance of the evidence.[10]

Accordingly, Special Master Lord did not act arbitrarily, capriciously, or contrary to law when she employed the *Althen* factors to analyze whether, after petitioners established their prima facie case, respondent carried her burden to prove that a factor unrelated to the vaccine caused Madison's injuries.[11]

B.      *Petitioners' Objection to the Special Master's Reliance on the Expert Testimony of Dr. Raymond*

Petitioners' second objection in their motion for review is that the special master inappropriately relied on Dr. Raymond's testimony regarding Madison's genetic mutation and improperly substituted his testimony for legal causation.  More specifically, petitioners argue that the "Special Master's decision supplanting legal causation, or Respondent's *burden of proof*, with Respondent's expert's medical opinion was not in accordance with law."  Mot. for Review 2; *see id.* at 12–14.

---

[10] The Office of Special Masters has previously applied the *Althen* three-part test when determining if the government met its burden of proof.  *See, e.g.*, *Stewart v. Sec'y of Health & Human Servs.*, No. 06-777, 2011 WL 3241585, at *18 (Fed. Cl. July 8, 2011) (special master decision) ("In proving alternative causation, the government must also satisfy the three prong *Althen* test."); *Hazlehurst v. Sec'y of Health & Human Servs.*, No. 03-654V, 2009 WL 332306, at *18 (Fed. Cl. Feb. 12, 2009) (special master decision) ("Respondent bears the burden of proving alternative causation by preponderant evidence, and respondent establishes alternative causation (a factor unrelated to the administration of the vaccination) by satisfying the *Althen* factors . . . ."), *aff'd*, 88 Fed. Cl. 473, *aff'd*, 604 F.3d 1343 (Fed. Cir. 2010); *Heinzelman v. Sec'y of Health & Human Servs.*, No. 07-01V, 2008 WL 5479123, at *17–19 (Fed. Cl. Dec. 11, 2008) (special master decision) (employing the *Althen* factors when analyzing whether respondent met her burden of proving by preponderant evidence that a factor unrelated to the vaccine caused the petitioner's injury); *Walther v. Sec'y of Health & Human Servs.*, No. 00-0426V, 2008 WL 243762, at *15 (Fed. Cl. Jan. 29, 2008) (special master decision) (noting that a respondent establishes a prima facie case of alternative causation by satisfying the *Althen* factors).

[11] Because the Court so finds, it need not address the issue of waiver that respondent has identified.  *See* Resp't's Resp. to Pet'rs' Mot. for Review 15.

In support of their position, petitioners argue that the Vaccine Act states that the respondent must demonstrate legal causation with regard to the injury, and not merely rely on medical opinion to rebut a petitioner's prima facie case. *Id.* at 13. Petitioners argue that it was contrary to law for Special Master Lord to rely on the evidence presented by Dr. Raymond, respondent's expert during the second set of proceedings, and to disregard respondent's other two experts as well as petitioners' experts and evidence. *Id.* Petitioners argue that Special Master Lord erred when she "[chose] one expert over another" because the government fails to meet its burden, and compensation must be awarded, when a case involves conflicting experts and the evidence is "seen in equipoise." *Id.* (quoting *Harris v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 282, 304 (2011)).

"The purpose of the Vaccine Act's preponderance standard is to allow the finding of causation in a field bereft of complete and direct proof of how vaccines affect the human body." *Althen*, 418 F.3d at 1280. Accordingly, the circumstances of a given case are heavily considered when determining causation and specific, scientific proof is not required. *Knudsen*, 35 F.3d at 548–49 (explaining that "[c]ausation in fact under the Vaccine Act is . . . based on the circumstances of the particular case" and that "to require identification and proof of specific biological mechanisms would be inconsistent with the purpose and nature of the vaccine compensation program").

In light of the purpose and structure of the Vaccine Program, "[w]here 'medical evidence [is] not definitive' the special master may rely heavily on expert medical testimony." *Locane v. Sec'y of Health & Human Servs.*, 99 Fed. Cl. 715, 727 (2011) (second alteration in original) (quoting *Broekelschen*, 618 F.3d at 1347). In fact, it is the *responsibility* of the special master to weigh the persuasiveness of the expert testimony presented to him or her. *Moberly ex rel. Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1325 (Fed. Cir. 2010) ("Weighing the persuasiveness of particular evidence often requires a finder of fact to assess the reliability of testimony, including expert testimony, and we have made clear that the special masters have that responsibility in Vaccine Act cases."). As such, in vaccine cases, "[t]he special master's decision often times is based on . . . the relative persuasiveness of [the experts'] competing theories." *Broekelschen*, 618 F.3d at 1347 (citing *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1362 (Fed. Cir. 2000)); *see Moberly*, 592 F.3d at 1325 (noting that, in vaccine cases, "the legal standard is a preponderance of the evidence, not scientific certainty"). A special master's determinations regarding the persuasiveness of expert testimony are afforded considerable deference. *Broekelschen*, 618 F.3d at 1347.

In this case, Special Master Lord carefully considered all the evidence presented in the course of the litigation. When the case was transferred to her, she limited the proceedings to the issue of whether Madison's genetic mutation was a factor unrelated to the vaccine that caused her condition. She invited both parties to present evidence and argument in support of their respective positions.

Petitioners' expert, Dr. Tornatore, did not change his testimony from the first proceeding, stating that his opinion was unaffected by the evidence of Madison's genetic mutation. *Deribeaux*, 2011 WL 6935504, at *6, *12. With regard to the issue of causation, Dr. Tornatore explained that an MRI Madison received eighteen months after her initial seizure revealed that she suffered brain damage, which led him to conclude that the initial seizure, caused by the

vaccine, resulted in her condition. *Id.* at *36–38. Dr. Raymond, respondent's expert, refuted Dr. Tornatore's opinion, explaining that, if such damage had been done by the first seizure, Madison would have exhibited clinical symptoms, which she did not. *Id.* at *38. The special master's decision indicates that she carefully considered the opinions of both experts, finding respondent's expert more persuasive and explaining that "[n]o reliable medical evidence supported the allegation that Madison's initial seizure caused brain damage that led to further seizures." *Id.*

The special master is entitled to find one expert's opinion more persuasive than another's, and there is nothing in the record that suggests that the special master erred when she determined that respondent's expert's opinion should be afforded more weight than the other experts' opinions. This is especially so considering the findings contained in the relevant medical literature the special master reviewed as well as the specific qualifications of Dr. Raymond, who "is one of a limited number of physicians in the United States who holds board certifications in neurology and genetics, as well as special competence in child neurology and clinical genetics." *Id.* at *23. Dr. Tornatore is board certified in neurology, but not in genetics or pediatrics, a distinction that is particularly significant for purposes of this case.[12] *Id.* at *9; *see also id.* at *38.

Accordingly, Special Master Lord did not act arbitrarily, capriciously, or contrary to law when, after considering all the evidence and testimony, she found Dr. Raymond's expert opinion persuasive with regard to the issue of causation. It is within her discretion as a special master to rely on the testimonial evidence of experts and to determine the expert's persuasiveness. *See Broekelschen*, 618 F.3d at 1347. Indeed, this very action is contemplated by the Vaccine Program. *See Althen*, 418 F.3d at 1280; *Knudsen*, 35 F.3d at 548–49; *Locane*, 99 Fed. Cl. at 727.

C.      *Petitioners' Objection to the Special Master's Determination that Respondent Proved the Existence of a Sole Substantial Factor Unrelated to the Vaccination*

Petitioners' third objection to the special master's decision is that the special master's determination that respondent demonstrated that a sole substantial factor unrelated to the vaccine caused Madison's condition, and thus satisfied respondent's burden of proof, was arbitrary, capricious, an abuse of discretion, and contrary to law. Petitioners seem to rest this objection on three theories: (1) respondent conceded that Madison's first fever and seizure were triggered by the vaccine, (2) respondent presented more than one substantial factor unrelated to the vaccine, and (3) the evidence presented before the special master did not support her conclusion that respondent carried her burden.

---

[12] The Federal Circuit has determined that, in two other cases involving children who received the DTaP vaccine and suffered from DS, the special master did not act arbitrarily or capriciously in finding that Dr. Raymond's testimony was more persuasive than the testimony of the petitioners' experts in light of Dr. Raymond's qualifications. *Stone*, 2012 WL 1432525, at *3, *8–9.

1.    <u>Respondent's Experts' Statements that the Vaccine Triggered Madison's
First Fever and Seizure Do Not Render the Special Master's Decision
Arbitrary, Capricious, an Abuse of Discretion, or Contrary to Law</u>

First, petitioners point out that all three of respondent's experts conceded that the vaccine caused Madison's first seizure, specifically highlighting Dr. Raymond's agreement with the special master's statement that the vaccine "likely contributed to the first febrile seizure." Mot. for Review 15, 17. Petitioners argue that "it is arbitrary, capricious and an inherent contradiction to state the injury followed the vaccine but was not caused by the vaccine when all parties concede the vaccine *caused* the first seizure." *Id.* at 16.

Petitioners also point out that the genetic mutation Madison had "can be present *without* a diagnosis of [DS]." *Id.* They reason that respondent has not adequately shown that Madison's symptoms would have resulted from this mutation regardless of the vaccine and posit that "the Special Master's conclusion that Madison was 'destined from infancy' to have [DS] ignores actual reality . . . and her conclusions are therefore contrary to law." *Id.* at 17.

In addition, on this theory and somewhat intertwined with their first objection regarding the standard of proof the special master applied, petitioners maintain that "[u]nder the Restatement of Torts [respondent] cannot meet [her] burden if the injury from the 'alternate cause' is indistinguishable from the vaccine injury." *Id.* at 20. Petitioners rest this claim on the fact that respondent conceded that Madison's first seizure was a result of the vaccine; if respondent cannot prove that the first seizure is due to the genetic mutation, and not the vaccine, petitioners maintain that respondent has not met her burden. *Id.*

Respondent argues that, although Dr. Raymond "agreed that the DTaP vaccination likely caused the fever, which brought about Madison's initial seizure, he emphatically stated that the DTaP fever itself was not the cause of Madison's seizure disorder." Resp't's Resp. to Pet'rs' Mot. for Review 18. Respondent then highlights the evidence that Madison's age was "within the typical onset period for [DS]" and the manifestation of DS was "entirely typical." *Id.* Additionally, respondent argues that there was no evidence that the initial seizure altered Madison's clinical course or resulted in permanent brain damage. *Id.* at 18–19. In support of the soundness of the evidence, respondent highlights her expert's qualifications as a child neurologist who often analyzes children who have suffered brain damage.

That respondent's experts stated that the vaccine caused the initial fever and seizure does not lead the Court to conclude that the special master's causation determination was erroneous. The evidence reviewed by the special master was sufficient to support her finding that the genetic mutation was a substantial factor unrelated to the vaccine that caused Madison's condition. That the vaccine triggered the first seizure, a fact that Special Master Lord recognized, *Deribeaux*, 2011 WL 6935504, at *32, is not dispositive. The evidence proved that the initial seizure did not cause permanent brain damage and that Madison's condition, including her developmental delay, is a result of DS, not the DTaP vaccine. Additionally, although the circumstances of each case should be considered anew, it is notable that the Federal Circuit has previously affirmed the determination that a mutation of a child's SCN1A gene was the sole

substantial factor unrelated to the DTaP vaccine in causing DS. *See Stone*, 676 F.3d 1373.[13]
Here, Special Master Lord's finding that Madison's genetic mutation was a sole substantial cause
of her condition despite the fact that the vaccine triggered her *initial* seizure was not arbitrary or
capricious.[14]

---

[13] *See also Hammitt*, 98 Fed. Cl. at 727 ("[T]his Court finds Respondent's evidence that [the
petitioner's] SCN1A gene mutation caused her SMEI strong enough to demonstrate that it was
the 'sole substantial' cause . . . ."); *Stone*, 99 Fed. Cl. at 193 (upholding the special master's
determination that the respondent proved by preponderant evidence that the petitioner's "SMEI
was caused solely by an SCN1A gene mutation, a factor unrelated to the [DTaP] vaccine").

[14] Also in support of their argument that the special master improperly concluded that respondent
met her burden even though her experts stated that the vaccine triggered Madison's first seizure,
petitioners cite *Harris v. Secretary of Health & Human Services*, 102 Fed. Cl. 282 (2011).  Mot.
for Review 18–19.  In that case, the Court of Federal Claims reversed a special master's decision
denying compensation "because the Government failed to meet its burden of [proof to establish
that the presence of a SCN1A mutation was not merely a possible alternate cause of [the
petitioner's] first febrile seizure and [generalized epilepsy with febrile seizures plus ("GEFS+")],
but was, in fact, the sole cause of [the petitioner's] first febrile seizure and subsequent GEFS+."
*Harris*, 102 Fed. Cl. at 304.  In *Harris*, the petitioner received the DTaP vaccine, suffered a
seizure shortly thereafter, and was subsequently afflicted with periodic seizures, a condition that
was found to be GEFS+, which is associated with an SCN1A genetic mutation, but was
determined to be less severe than DS.  *Id.* at 284–86.  The main issue was "whether the DTaP
vaccine, even if it caused the first seizure, affected [the petitioner's] ultimate outcome."  *Id.* at
298.  On review, the Court of Federal Claims noted that the case involved conflicting expert
testimony and determined that, although the respondent had submitted sufficient evidence to
show that the genetic mutation *could be* an alternative cause of petitioner's injury, respondent
had failed to meet her burden to prove that it *was* an alternative cause of the injury.  *Id.* at 304.
Therefore, the court concluded that the petitioner was entitled to compensation because he
"carried his burden to demonstrate that his condition was caused-in-fact by his DTaP
vaccination."  *Id.*

   Petitioners argue that, in the present case, respondent has likewise failed to prove that
Madison's genetic mutation was the cause of her injury.  However, in *Harris*, the condition
resulting from the petitioner's genetic mutation was less severe than DS, and Dr. Raymond—the
same expert who testified for respondent during the second proceeding in this case—"was
'uncertain' as to why [the petitioner's] mutation did not result in SMEI or [DS] in light of the
factors he looks to when determining whether a mutation will be severe or not."  *Id.* at 302.
Therefore, that there was inadequate evidence of causation in one case involving GEFS+ does
not indicate that there is insufficient evidence of alternative causation in a different case, such as
this one, involving DS.  As noted, the circumstances of each particular case should dictate its
result.  *Knudsen*, 35 F.3d at 548 ("Causation in fact under the Vaccine Act is . . . based on the
circumstances of the particular case, having no hard and fast *per se* scientific or medical rules.").

2.      Respondent Proved by a Preponderance of the Evidence that a Sole
        Substantial Factor Unrelated to the Vaccine Caused Madison's Condition

Petitioners' second argument is that the respondent has "alleged *three* 'sole substantial factors' unrelated to the vaccine as potential causes of Madison's injuries."  Mot. for Review 10–11.  This, petitioners argue, has the effect of lowering respondent's burden of proof.

As discussed, the Federal Circuit in *de Bazan* explained that the government meets its burden of proving a factor unrelated to the vaccine caused the injury "by identifying a particular factor (or factors) and presenting sufficient evidence to establish that it was the *sole substantial factor* in bringing about the injury."  539 F.3d at 1354 (emphasis added) (citing *Knudsen*, 35 F.3d at 548).  Notably, the Federal Circuit did not require the respondents in vaccine cases to establish the "sole factor" in bringing about a petitioner's injury, but rather the sole *substantial* factor.

With regard to the meaning of the term substantial, the Federal Circuit explained that a petitioner must show that the vaccine was not only a but-for cause of the injury, but was also a substantial factor in bringing about such injury.  *de Bazan*, 539 F.3d at 1351.  The *de Bazan* court defined but-for causation as requiring that "the harm be attributable to the vaccine to some non-negligible degree," and noted that, although substantial is somewhere beyond the low threshold of but-for causation, it does not mean that a certain factor must be found to have definitively caused the injury.  *Id.*  Accordingly, a factor deemed to be *substantial* is one that falls somewhere between causing the injury to a non-negligible degree and being the "sole or predominant cause."  *Id.*

This definition of substantial—somewhere between non-negligible and predominant—is applicable to respondent's burden to prove a sole substantial factor unrelated to the vaccine.  Accordingly, a respondent's burden is to prove that a certain factor is the only *substantial factor*—one somewhere between non-negligible and predominant—that caused the injury.

Here, although petitioners established their prima facie case, the special master determined that respondent successfully proved by more than preponderant evidence that Madison's genetic mutation was the sole substantial factor contributing to her disease.  *Deribeaux*, 2011 WL 6935504, at *44 ("Respondent submitted more than preponderant evidence that an alternative factor, Madison's genetic mutation, was the sole substantial cause of her neurological condition.").  Nothing in the record suggests that this determination was erroneous or unfounded.  Moreover, that respondent presented other evidence and testimony during the first proceeding that suggested that other factors may have contributed to Madison's condition, such as Kawasaki's disease and enterovirus, does not preclude the special master from determining that Madison's genetic mutation was the sole substantial factor in bringing about her condition.  This is especially so in light of the fact that the evidence of Madison's genetic mutation was revealed after the first proceeding concluded.[15]

_____

[15] With regard to the timing of the evidence of the genetic mutation, respondent at oral argument stated that the lateness of the mutation evidence "casts doubt on the reliability of the first Special Master's conclusion that Petitioners had made their prima facie case."  Transcript of Oral

3.    The Weight of the Evidence Supports the Special Master's Determination

During oral argument, petitioners implicitly maintained that the weight of the evidence does not support the special master's conclusion that respondent carried her burden of proof. They emphasized, in particular, that "[t]here is no one-to-one relationship between Madison Deribeaux's genetic mutation, and . . . [her] seizure disorder."  Transcript of Oral Argument at 12–13, *Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs.*, No. 05-306V (Fed. Cl. Apr. 30, 2012).  That the mutation necessarily results in DS, petitioners argued, is "total and complete speculation," and the special master's reliance on such speculation was erroneous.  *Id.* Petitioners seem to argue that they should prevail because it cannot be said with absolute certainty that Madison, by reason of her genetic mutation, would have experienced the same symptoms even if she had not been vaccinated.

Special Master Lord rightly recognized in her decision that "[p]roof of an unrelated factor does not, under the Vaccine Act, require absolute certainty."  *Deribeaux*, 2011 WL 6935504, at *32; *see Knudsen*, 35 F.3d at 548–49 ("The determination of causation in fact under the Vaccine Act involves ascertaining whether a sequence of cause and effect is 'logical' and legally probable, not medically or scientifically certain.").  In fact, a requirement that a respondent definitively prove that a factor unrelated to the vaccine caused the injury at issue would contravene the purpose of the Vaccine Act, which, as noted, is "to allow the finding of causation in a field bereft of complete and direct proof of how vaccines affect the human body."  *Althen*, 418 F.3d at 1280.  Here, the special master found that, although the vaccine played a role in triggering Madison's first seizure, "there is more than preponderant evidence that a genetic abnormality was the sole substantial cause of Madison's neurological condition."  *Deribeaux*, 2011 WL 6935504, at *32.  The special master was not required to find that a conclusive one-to-one relationship existed between Madison's illness and her genetic mutation.  The Court finds no error in the special master's application of the preponderance standard under the Vaccine Act.

Accordingly, Special Master Lord did not abuse her discretion or act arbitrarily, capriciously, or contrary to law when she determined that respondent met her burden of proving by a preponderance of the evidence that a substantial factor unrelated to the vaccine caused Madison's injuries.

---

Argument at 30, *Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs.*, No. 05-306V (Fed. Cl. Apr. 30, 2012).  The Court recognizes that respondent's evidence is relevant not only once the burden shifts, but that the special master may also consider evidence offered by the respondent in evaluating the petitioner's case-in-chief.  *Stone*, 676 F.3d at 1379–80; *Doe v. Sec'y of Health & Human Servs.*, 601 F.3d 1349, 1358 (Fed. Cir. 2010); *de Bazan*, 539 F.3d at 1353. However, because the Court finds that the special master properly found that respondent carried her burden to show alternative causation, the Court need not inquire into how the evidence of Madison's genetic mutation might have affected the outcome of petitioners' case-in-chief.

**CONCLUSION**

In view of the foregoing, the Court upholds the special master's findings of fact and conclusions of law as well as the special master's decision denying petitioners' claim for compensation under the Vaccine Act.  Accordingly, petitioners' motion for review is **DENIED**, and Special Master Lord's December 9, 2011 decision is **AFFIRMED**.

**IT IS SO ORDERED.**

                                                  s/ George W. Miller
                                                GEORGE W. MILLER
                                                         Judge